114 F.3d 1193
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re Ricky Dale ANDERSON, whose husband is Donald G.
Anderson aka Ricky Dale Bumsted, Debtor.
Ricky Dale ANDERSON, Plaintiff-Appellee,
v.
HOMESTEAD USA LTD.; Homestead USA of Spokane, Inc.; Lily
M. Todd; Donald G. Anderson; Defendants,
Jack R. Reeves, Trustee,
and
Bryan Lee Lindgren, Defendant-Appellant.
 Nos. 95-35829, 95-35832 and 96-35208.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 7, 1997.
Decided May 27, 1997.
 
 Before: LAY,* BEEZER and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Bryan Lee Lindgren appeals pro see several rulings of the district court. Lindgren's appeals were consolidated, and we affirm.
 
 
 3
 In April 1992, Lindgren consulted a publication called The County Record and discovered that Ricky Dale Anderson's property was in foreclosure. Lindgren then sent Anderson a letter asking her to call him if she wanted his help with buying, selling or lending on her home. Lindgren testified that as part of his real estate business he would solicit people in Anderson's situation and "lay out the options to the people and allow them to select the best for them." Anderson apparently believed that Lindgren could help her save her family home. She responded to Lindgren's letter by going to his business, which he operated out of defendant Lily Todd's home.[1] Anderson testified that she felt "in a bind," and that she did not have the money to cure her default or to pay for an attorney to represent her at the time. The parties met briefly, and Lindgren admits that Anderson was "adamant that she did not want to sell the property."
 
 
 4
 Eventually, Lindgren's attorney drafted an agreement that the parties signed on June 22, 1992. Under the agreement, Anderson's property was transferred to Homestead U.S.A., Ltd. (Homestead), Lindgren's corporation, in exchange for assumption of the existing loan on the property. The default amount on Anderson's loan was $4,684.32, and the balance on the loan was approximately $19,200. The bankruptcy judge found that Anderson's property was worth approximately $62,000. Therefore, Anderson's equity in the property at the time of the transfer was approximately $43,000. In exchange for transferring ownership and equity in the property, Anderson received no money. Anderson testified that she believed she received what amounts to an indefinite lease on the property. However, because the lease was not acknowledged, under Washington law it was a month-to-month tenancy under which Anderson was required to pay $420 per month in rent, approximately $70 more per month than the mortgage payments that were in arrears. On September 24, 1992, Anderson again signed the quitclaim deed transferring the property. In March 1993, Homestead began eviction proceedings against Anderson.
 
 
 5
 On April 15, 1993, Anderson filed a Chapter 7 bankruptcy petition. Anderson then filed an adversary proceeding against the defendants to avoid the transfer of the property as a fraudulent transfer and for damages under the Washington Consumer Protection Act (WCPA) and other theories. On the core issue, the bankruptcy court held that Anderson had established a fraudulent transfer under 11 U.S.C. § 548, that the transfer of the property was not a "voluntary transfer" within the meaning of 11 U.S.C. § 522(g)(1)(A), that Anderson should recover the property from Homestead, and that both Lindgren and Homestead should be held liable for the devaluation to the property.
 
 
 6
 The district court affirmed the bankruptcy court's holding that the transfer of Anderson's property was an involuntary fraudulent transfer. The district court adopted the recommendation of the bankruptcy court on the non-core issue and held that Lindgren and Homestead violated the WCPA. Lindgren then filed motions to reconsider and for the district court to seal files containing his criminal records. The district court rejected these motions. The district court held that Anderson was entitled to $23,831.88 in attorneys' fees and $5,000 in punitive damages from Lindgren and Homestead.
 
 
 7
 Lindgren argues that the bankruptcy court erred in voiding the transfer because it was a voluntary transfer. However, we find no error in the bankruptcy court's conclusions of law nor clear error in its findings of fact. We affirm the avoidance of the transfer.
 
 
 8
 Lindgren contends that the district court erred in holding that his actions constituted an unfair or deceptive practice violative of the WCPA. Upon review of the briefs and the record in this case, we hold that the evidence supported the district court's findings and therefore affirm the conclusion that Lindgren violated the WCPA.
 
 
 9
 Lindgren submits that the district court erred in denying his request to seal files containing his criminal records. As part of Lindgren's inquiry to the Washington Department of Licensing regarding the possibility of reinstatement of his real estate license, Lindgren authorized the release of his criminal records. The district court held that once Lindgren authorized the Washington Department of Licensing to obtain his criminal records in order to create an investigative file the information became public documents subject to disclosure under the Washington State Public Disclosure Act. We find no error of law or fact in the district court's analysis.
 
 
 10
 Lindgren argues that the district court erred in awarding Anderson attorneys' fees and punitive damages under the WCPA. Upon review of the record and the briefs, we find no abuse of discretion in the district court's determination of the awards.
 
 
 11
 Lindgren submits that the district court erred in refusing to consider his objections to the bill of costs entered in the bankruptcy court. Because Lindgren failed to object in the bankruptcy court to the taxing of costs, and failed to follow the bankruptcy court rules for appealing taxation of costs, we affirm.
 
 
 12
 Finally, Lindgren argues that the district court judge was prejudiced in favor of Anderson because of a conflict of interest and should have recused himself. We find no basis to require the district judge to have recused himself.
 
 
 13
 Anderson's request for attorneys' fees for this appeal is denied.
 
 
 14
 AFFIRMED.
 
 
 
 *
 The Honorable Donald P. Lay, Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The bankruptcy court found insufficient evidence to impose liability on Lily Todd, and this ruling is not appealed